SLR:LDM:BDM
F.#2012V01335

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**12 M   560**

- - - - - - - - - - - - - - - - - -X

In re the Seizure of:

ANY AND ALL UNITED STATES CURRENCY
TOTALING NINE HUNDRED FIFTY THOUSAND
DOLLARS AND NO CENTS ($950,000.00),
MORE OR LESS, FOUND IN CAPITAL ONE
BANK SAFE DEPOSIT BOX NO. 077001766
HELD IN THE NAME OF GAZY ALI, LOCATED
AT 120-32 QUEENS BOULEVARD, QUEENS,
NEW YORK, AND

ANY AND ALL UNITED STATES CURRENCY
TOTALING FIVE HUNDRED FORTY-SIX
THOUSAND DOLLARS AND NO CENTS
($546,000.00), MORE OR LESS, FOUND IN
CAPITAL ONE BANK SAFE DEPOSIT BOX NO.
0771000157 HELD IN THE NAME OF GAZY
ALI, LOCATED AT 120-32 QUEENS
BOULEVARD, QUEENS, NEW YORK.

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANTS

Case No.

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      Mark Z. Manko, being duly sworn, deposes and states as

follows:

      1.   I am a Special Agent with the Drug Enforcement

Administration ("DEA"), assigned to the New York Field Division

in New York, New York.

      2.   I began my law enforcement career as Special

Agent with the DEA in October 1997. Since then, I have been

assigned to the DEA New York field division, where I have

investigated violations of federal law, including narcotics trafficking and money laundering. More specifically, I have participated in the investigation of violations of the Controlled Substances Act (codified in Title 21, United States Code), the Money Laundering Control Act (codified in Title 18, United States Code), the Internal Revenue Laws (codified in Title 26, United States Code), the Bank Secrecy Act (codified in Title 31, United States Code), and related offenses. In addition, I have participated in the execution of several hundred arrests, search and arrest warrants, and debriefings of informants. Further, I have received training in the investigation of crimes, including money laundering and other financial crimes. As a result of my training and experience, I am familiar with the methods of the operation of narcotics trafficking organizations.

3. This affidavit is made in support of an application for seizure warrants for (i) any and all United States currency totaling approximately $950,000 found in Capital One Bank safe deposit box no. 077001766 held in the name of Gazy Ali, located at 120-32 Queens Boulevard, Queens, New York ("Subject Box #1") and (ii) any and all United States currency totaling approximately $546,000.00 found in Capital One Bank safe deposit box no. 0771000157 held in the name of Gazy Ali, located at 120-32 Queens Boulevard, Queens, New York ("Subject

- 2 -

Box #2" and, together with Subject Box #1, the "Subject Boxes")).

4.    The facts and information in this affidavit are based upon my personal knowledge, the observations of other law enforcement personnel involved in this investigation, and my review of bank records.

5.    This affidavit is submitted in support of an application to seize United States currency found in the Subject Boxes, and is not intended to include each and every fact and matter observed by me or known to the government.

<u>STATUTORY FRAMEWORK</u>

6.    Pursuant to 21 U.S.C. § 853(a)(1), all property constituting or derived from any proceeds obtained directly or indirectly as the result of a violation of the Controlled Substances Act, to wit, 21 U.S.C. §§ 841 <u>et seq.</u>, punishable by more than one year's imprisonment, is subject to forfeiture to the United States.

7.    Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, or proceeds traceable to such an exchange, are subject to forfeiture to the United States.

INVESTIGATORY BACKGROUND

8. Narcotics trafficking organizations, and individuals associated with the organization, frequently utilize safe deposit boxes to store cash profits derived from sales of narcotics. Members of the organization frequently rely on the assistance of third party "nominees" in order to enter into a contract with a bank or other financial institution for one or more safe deposit boxes, in exchange for a fee. Although the safe deposit boxes are held in the name of the third party nominees, the true owners of the contents of the boxes are actually members of the drug trafficking organization.

9. The use of safe deposit boxes held by a third party nominees to secret large amounts of cash, in lieu of depositing the cash into interest bearing bank accounts, allows members of the narcotics trafficking organization to avoid federal reporting requirements, including the filing of currency transaction reports ("CTRs") for all cash transactions in excess of $10,000.00. CTRs are filed with the Financial Crimes Enforcement Network ("FinCEN") at the Detroit Data Center on forms that require disclosure of, among other information, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed. For these reasons, the use of safe deposit boxes to secret cash constitutes a violation of bank policy.

## THE INVESTIGATION

10.  On or about June 4, 2012, a source of information advised the DEA, in sum and substance, that at around 4:30pm later that day, an individual by the name of as Gazy Ali would be attempting to empty the contents of a safe deposit box located at the Capital One bank branch located at 120-32 Queens Boulevard, Queens, New York.  The source of information further stated his/her belief that the safe deposit box contained a large amount of United States currency that represented narcotics proceeds.

11.  Upon receiving the above information, the DEA issued an administrative subpoena directed to Capitol One Bank for any and all records of accounts held by Gazy Ali.

12.  According to information received from Capital One Bank, payment for a safe deposit box held in the name of Gazy Ali is overdue.  According to bank officials, the bank attempted to inform Gazy Ali of the overdue payment by certified return receipt letter sent to 22 Pershing Crescent, Briarwood, New York, which was the address indicated on a signature card for the safe deposit box.  Records maintained by the bank further reflect that an individual by the name of "Gazi Ali" (Gazi with an "i") signed for the delivery at that address on or about June 19, 2010.

- 5 -

13. Due to continued overdue payment and independently from any law enforcement request, on or about May 31, 2012, Capital One Bank officials, pursuant to normal banking procedures, opened Subject Box #1, which was found to contain approximately $950,000 in United States currency in violation of bank policy.

14. Bank records reflect that Subject Box #1 was held in the name of Gazy Ali, who contracted for the box on or about September 22, 2001, and that nobody has accessed the box since that date.

15. In addition, the bank signature card for Subject Box #1 reflects that an individual by the name of "Vadem Brosley" was also authorized to access the box.

16. While preparing an inventory for Subject Box #1, Capital One Bank officials became aware that, in fact, payment for Subject Box #1 was up to date and in good standing and that payment was actually outstanding for Subject Box #2.

17. Bank records reflect that Subject Box #2, also held in the name of Gazy Ali, was contracted for by a modification to the contract for Subject Box #1 on or about June 19, 2003, and only accessed on one occasion since that time.

18. In addition, the bank signature card for Subject Box #2 reflects that individuals by the name of "Gazi Ali" (Gazi

with an "i") and "Dean Brodsky" were also authorized to access the box.

19. On or about May 31, 2012, Capital One Bank officials, pursuant to normal banking procedures, opened Subject Box #2, which was found to contain approximately $546,400 in United States currency in further violation of bank policy.

20. Later that same day, representatives of Capital One Bank left a voicemail message for Gazy Ali (Gazy with a "y") at a contact telephone number previously provided to the bank.

21. Two days later, on June 2, 2012, an individual identifying himself as Gazy Ali contacted Capital One Bank officials, who informed him that Subject Box #1 was inadvertently opened for nonpayment, but that the contents of the box had been secured, and that he could obtain another box at the bank. The individual then told bank officials that he would have to get back to them.

22. Approximately twenty minutes later, an individual identifying himself as Gazi Ali (Gazi with an "i") called Capital One Bank and advised the bank that he had received a call from a "friend" stating that the bank had opened the friend's safe deposit box, which bank officials believed to refer to Subject Box #1. The individual further stated that he wanted to retrieve to contents of his box, which bank officials believed to refer to Subject Box #2.

- 7 -

23.   Approximately fifteen minutes later, an individual identifying himself as Gazi Ali (Gazi with an "i") arrived at the Capital One bank branch located at 120-32 Queens Boulevard, Queens, New York, and requested access to his safe deposit box, which the bank believed to refer to Subject Box #2. However, the bank declined to allow the individual to access any box because the individual indicated that he did not know the box number, was not in possession of the key, and was uncertain of the key's location.

24.   A check of subscriber records by DEA revealed that 917-822-6724 is the telephone number for 104th Street Auto Repair Center which, according to public records, is a business owned and operated by Gazy Ali (Gazy with a "y").  Further examination of queried records revealed that this phone number was called roughly twenty-three (23) times from phone number 347-385-3008 during the period from December 11, 2010 through January 2, 2011.

25.   Subscriber records for phone 347-385-3008 reflect an individual by the name of Juan Camareno as the owner.  Juan Camareno was arrested by DEA Long Island Field Division on November 10, 2011, and charged with two counts of criminal sale of a controlled substance in violation of N.Y. Penal Law §§ 220.41-1 and 220.16-1, in a case which is currently pending in Nassau County Criminal Court.  The charges against Camareno

- 8 -

stemmed from two incidents on or about July 21, 2011 and August 10, 2011, in which Camareno sold cocaine in excess of two ounces to an agent of the police. Those sales took place at 161-15 Hillside Avenue, Jamaica, New York. This location is approximately two blocks away from where, according to public records, Gazy Ali (Gazy with a "y") presently resides, which is 159-34 Highland Avenue, Jamaica, New York.

26. On or about June 6, 2012, while at the Capital One bank branch located at 120-32 Queens Boulevard, Queens, New York, law enforcement officers from the DEA and the Nassau County Police Department ("NCPD") inspected the currency found in the Subject Boxes. At this time, NCPD Canine "Jax," supervised by his handler, alerted positive to the presence of traces of narcotics on the currency found in Subject Box #2.

27. On or about June 7, 2012, a law enforcement representative posing as an official of Capital One Bank attempted to contact Gazi Ali (Gazi with an "i") at a telephone number that he had previously provided to the bank. During the conversation, an individual identifying himself as Gazi Ali was asked about the source and intended use of the money found in Subject Box #2. In response, the individual indicated the money belonged to "people" who were "asking him about it" and that the money was intended for "investment" by "family." Gazi Ali declined to provide any identifying information about who any of

these "people" or "family" were or the nature of the "investment" that was intended. Gazi Ali also stated that he did not know the last time he accessed Subject Box #2. When asked about Dean Brodsky, the other signatory on Subject Box #2, Gazi Ali stated that he was a "family friend."

28. The next day, on or about June 8, 2012, a law enforcement representative posing as an official of Capital One Bank attempted to contact Gazy Ali (Gazy with a "y") at the telephone number for 104th Street Auto Repair Center, the business that he owns and operates. An individual who identified himself as Gazy Ali (Gazy with a "y") stated that he did not know how much money was in Subject Box #1, but that Vadem Brosley, who was authorized to access the box, should know more about the box and its contents. Gazy Ali (Gazy with a "y") advised the representative to contact his brother, Gazi Ali (Gazi with an "i") in order to obtain contact information for Vadem Brosley.

29. After obtaining a contact telephone number for Vadem Brosley from Gazi Ali (Gazi with an "i"), the law enforcement representative spoke with an individual identifying himself as Vadem Brosley. In that conversation, the individual said he that he had no interest in the contents of either of the Subject Boxes.

30. Based upon my training and experience, Gazi Ali's (Gazi with an "i") lack of knowledge of basic details concerning Subject Box #2, including the box number, the location of the box key, and the last time he accessed the box, when viewed together with his statements about how other "people" were inquiring about the box contents, are all inconsistent with the exercise of legitimate ownership of currency found in the box, and consistent with the secreting of money as nominee on behalf of a narcotics trafficking organization in lieu of the deposit of such funds into an interest bearing account.

31. Likewise, Gazy Ali's (Gazy with a "y") and Vadem Brosley's disclaimer of any knowledge or interest in funds contained in Subject Box #1 are also inconsistent with the exercise of legitimate ownership of currency found in the box, and consistent with the secreting of money as nominee on behalf of a narcotics trafficking organization in lieu of the deposit of such funds into an interest bearing account.

CONCLUSION

32. There is probable cause to believe that all currency found in the Subject Boxes constitutes or is derived from proceeds obtained directly or indirectly as the result of a violation of the Controlled Substances Act, to wit, 21 U.S.C. §§ 841 et seq., punishable by more than one year's imprisonment, and is subject to forfeiture pursuant to 21 U.S.C. § 853(a)(1).

33.   In addition, there is probable cause to believe that all currency found in the Subject Boxes is traceable to moneys furnished or intended to be furnished in exchange for a controlled substance, and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

34.   Accordingly, pursuant to 21 U.S.C. § 853(f) and 18 U.S.C. § 981(b), I respectfully request that the Court issue warrants authorizing the seizure of all currency found in the Subject Boxes.

35.   A restraining order, pursuant to 21 U.S.C. § 853(e), will not be sufficient to preserve the assets in question given the ease with which currency may be moved or transported.

SA _____

Mark Z. Manko
Special Agent
Drug Enforcement Administration

Sworn to before me this
11th Day of June, 2012

HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK